IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>TONY HULSTEIN,<br><br>  Defendant. | No. CR 09-4028-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S PRETRIAL MOTION TO ALLOW TESTIMONY**<br><br><u>FILED UNDER SEAL</u> |

_____

In a pretrial evidentiary motion,[1] defendant Tony Hulstein, who is charged with various offenses allegedly arising from dealing firearms without a license,[2] asks me to

___

[1] *See* Defendant's February 16, 2012, Pretrial Motion [Regarding] Rod Fonkert['s] Testimony [Under] Federal Rule 801(a) Present Sense Impression (docket no. 236). Hulstein's pretrial evidentiary motion was filed, notwithstanding his counsel's representation during a telephonic status conference on February 7, 2012, that no pretrial motions were anticipated. More troubling, however, is that the motion was filed after the deadline for pretrial motions, at least 14 days before the commencement of trial, in the controlling Trial Management Order (docket no. 113). Nevertheless, I will consider the motion on its merits, not least because, on February 17, 2012, the prosecution filed a Response To Defense Memorandum On Federal Rule Of Evidence 803(1) (docket no. 238) addressing only the merits, not the timeliness, of the motion.

[2] In a Second Superseding Indictment (docket no. 196), filed August 25, 2011, Hulstein is charged with the following offenses: **Count 1** charges that, between about November 2004 and 2009, Hulstein, not being a licensed dealer of firearms, willfully engaged in the business of dealing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); **Count 2** charges that, on or about April 2, 2007, with the intent

(continued…)

allow certain testimony at trial from a friend, Rod Fonkert, about what Hulstein said after a meeting with an inspector from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), pursuant to the "present sense impression" hearsay exception in Rule 803(1) of the Federal Rules of Evidence. Specifically, Hulstein asks me to allow Fonkert's testimony that, while driving Fonkert home after the meeting, Hulstein told Fonkert that he "signed a form taking back his original application for a firearms license because the agent indicated that Tony didn't need a license. . . . Tony said all he wanted a license for

---

[2](…continued)
to engage in conduct that constitutes a violation of 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), Hulstein traveled from Iowa, or any other state, into Texas, and acquired or attempted to acquire firearms in such other state in furtherance of such purpose, in violation of 18 U.S.C. § 924(n); **Count 3** charges that, on or about November 25, 2008, with the intent to engage in conduct that constitutes a violation of 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), Hulstein traveled from Iowa, or any other state, into Michigan, and acquired or attempted to acquire firearms in such other state in furtherance of such purpose, in violation of 18 U.S.C. § 924(n); **Count 4** charges that, on or about December 16, 2008, with the intent to engage in conduct that constitutes a violation of 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), Hulstein traveled from Iowa, or any other state, into Michigan, and acquired or attempted to acquire firearms in such other state in furtherance of such purpose, in violation of 18 U.S.C. § 924(n); **Count 5** charges that, on or about April 16, 2009, with the intent to engage in conduct that constitutes a violation of 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), Hulstein traveled from Iowa, or any other state, into Michigan, and acquired or attempted to acquire firearms in such other state in furtherance of such purpose, in violation of 18 U.S.C. § 924(n); **Count 6** charges that, on or about April 12, 2011, Hulstein made and presented to the office of Representative Steve King and the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a claim against the Bureau of Alcohol, Tobacco, Firearms, and Explosives, for damage on April 22, 2009, to a 2008 Dodge truck, knowing that the claim was false and fraudulent in that the Bureau of Alcohol, Tobacco, Firearms, and Explosives was not responsible for any damage done to the truck, in violation of 18 U.S.C. § 287. A jury trial on these charges against Hulstein is set to begin on February 27, 2012.

was to make sure that he wasn't doing anything illegal." The prosecution amplifies the circumstances of the statements in question somewhat, explaining that, on January 27, 2006, ATF Inspector Chris Zangari met with Hulstein at Hulstein's home. Apparently, Fonkert was at Hulstein's home at the time of, but not present during, Hulstein's meeting with Agent Zangari. After the meeting concluded, and the ATF agent left, Hulstein drove Fonkert to Fonkert's office and, in the course of the drive, made the statements in question.

Hulstein argues that the statements are admissible, because, immediately after the ATF agent told him that he did not need a license for what he was doing, he relayed that information to Fonkert while driving Fonkert home. In other words, Hulstein contends, he was relaying his present sense impression within minutes after the meeting. The prosecution argues that Hulstein's statements to Fonkert about why Hulstein wanted a license do not describe or explain the meeting, but are self-serving hearsay unrelated to the event just perceived by Hulstein. The prosecution also argues that the "spontaneity" factor that gives statements of present sense impressions their trustworthiness is missing here, because there is no accurate measure of time between the event and the statements. Based on Fondert's statement, the prosecution argues that, at the very least, before the statements were made, the meeting had gone on long enough for Fonkert to tire of waiting and to want to drive Hulstein's car to work, the meeting ended, the inspector left, and Hulstein began to drive Fonkert back to his office.

I believe that preliminary determination of the admissibility of the evidence put at issue in Hulstein's evidentiary motion will likely serve the ends of a fair and expeditious presentation of issues to the jury, assuming, of course, that the admissibility of that evidence can, in fact, be answered pretrial. *See* FED. R. EVID. 104 (providing that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined

by the court. . . ."); FED. R. EVID. 102 (providing that the rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined"). Therefore, I turn to the merits of the motion.

> Rule 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the hearsay rule. *See* Fed. R. Evid. 803(1). "'The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication.'" *United States v. Manfre,* 368 F.3d 832, 840 (8th Cir. 2004) (quoting *United States v. Blakey,* 607 F.2d 779, 785 (7th Cir. 1979), and also citing *United States v. Beck,* 122 F.3d 676, 681–82 (8th Cir. 1997)). "The present-sense-impression exception to the hearsay rule is rightfully limited to statements made while a declarant perceives an event or immediately thereafter, and [the Eighth Circuit Court of Appeals] decline[s] to expand it to cover a declarant's relatively recent memories." *Id.* Thus, statements made after too much time has passed are not admissible under this exception. *Id.* On the other hand, statements made about events that were "part of a single, continuous event" may have sufficient "contemporaneity" to fall within this exception. *United States v. Beck,* 122 F.3d 676, 682 (8th Cir. 1997).

As I explained in a ruling on pretrial evidentiary motions in one of my capital cases,

*United States v. Honken*, 378 F. Supp. 2d 970, 990 (N.D. Iowa 2004);[3] *accord United*

---

[3] The language of Rule 803(1) was amended, effective December 1, 2011—that is, after my ruling in *Honken* and the decision of the Eighth Circuit Court of Appeals in

(continued…)

4

*States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005) (explaining, "Underlying the Rule 803 exceptions is the idea that 'circumstantial guarantees of trustworthiness' may be found in some hearsay statements, making them as reliable as in court testimony. Fed.R.Evid. 803 advisory committee's note.").

In *Honken*, I rejected Rule 803(1) as the basis for admitting a statement of a murder victim, Terry DeGeus, that he was expecting a subpoena and that he was going to meet Honken's co-defendant, Angela Johnson. I found, first, that it was "not clear what 'event' DeGeus was purportedly 'perceiving' when he made [the] statements." *Id.* (citing Rule 803(1) and *Manfre*, 368 F.3d at 840). Next, I found that it was "unclear what the temporal relationship was between perception of any such event and the statements in question, such that it [wa]s difficult to assess whether the statements ha[d] sufficient contemporaneity to fall within the exception." *Id.* (citing *Manfre*, 368 F.3d at 840; *Beck*, 122 F.3d at 682). I found that the "present sense impression" exception was such an "uncomfortable fit" for the statements at issue that I did not believe that exception warranted admission of the murder victim's statements. *Id.* Similarly, in *Manfre*, the Eighth Circuit Court of Appeals had rejected Rule 803(1) as the basis for admitting some of the testimony of a friend of a co-defendant that the co-defendant had arrived late to a meeting and had explained that he had been talking to the defendant. 368 F.3d at 839-40.

---

³(…continued)
*Manre* on which I relied in *Honken*—to state that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not excluded by the hearsay rule. *See* 803 FED. R. EVID. (2011). Like other amendments to the Federal Rules of Evidence in 2011, however, the amendment to Rule 803(1) was "part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," was "intended to be stylistic only," and was not intended "to change any result in any ruling on evidence admissibility." FED. R. EVID. 803, Advisory Committee Notes, 2011 Amendments.

The court explained,

> Here, too much time had passed between when Mr. Rush [the co-defendant] spoke with Mr. Manfre [the defendant] and when he spoke with Mr. Strozier [the co-defendant's friend] to call the transaction a present-sense impression. At the very least, there was an intervening walk or drive between the time of the discussion with Mr. Manfre and the time when Mr. Rush spoke with Mr. Strozier. The present-sense-impression exception to the hearsay rule is rightfully limited to statements made while a declarant perceives an event or immediately thereafter, and we decline to expand it to cover a declarant's relatively recent memories. The opportunity for strategic modification undercuts the reliability that spontaneity [e]nsures.

*Manfre*, 368 F.3d at 840.

I do not believe that the statements by Hulstein to Fonkert at issue here even remotely satisfy the requirements of Rule 803(1) to be admissible as "present sense impressions." First, it is "not clear what 'event' [Hulstein] was purportedly 'perceiving' when he made [the] statements" that the only reason that he wanted a license was to be sure that what he was doing was legal. *Cf. Honken*, 378 F. Supp. 2d at 990 (citing Rule 803(1) and *Manfre*, 368 F.3d at 840). As the prosecution contends here, Hulstein's statement about the reason that he wanted a license does not "describ[e] or explain[ ] an event or condition, made while or immediately after the declarant perceived it," *see* 803 FED. R. EVID. (2011), so that it is not excepted from the hearsay rule. Moreover, nothing in Hulstein's purported statement to Fonkert, either that the ATF agent told him he did not need a license or about why Hulstein had wanted a license, satisfies the "contemporaneity" or "spontaneity" requirement to ensure reliability. *Cf. Manfre*, 368 F.3d at 840; *Honken*, 378 F. Supp. 2d at 990. As the prosecution suggests, some uncertain period of time—but certainly not seconds—passed between the conclusion of the meeting and Hulstein making

6

the statements to Fonkert, because the meeting had to end, the ATF agent had to leave, and Hulstein and Fonkert had to begin the drive together (whether to Fonkert's home or office is immaterial) before the statements were made. While it is difficult to assess the precise amount of time that had passed, *cf. Honken*, 378 F. Supp. 2d at 990, it is nevertheless clear that enough time had passed for "strategic modification" that would "undercut[] the reliability that spontaneity [e]nsures," because the statements were not "made while [Hulstein] perceive[d] [the meeting] or immediately thereafter"; rather, Hulstein's comments were, at best, about "relatively recent memories" outside the scope of Rule 803(1). *Manfre*, 368 F.3d at 840. Fonkert's testimony about Hulstein's statements is not admissible pursuant to Rule 803(1).[4]

THEREFORE, to the extent that defendant Hulstein's February 16, 2012, Pretrial Motion [Regarding] Rod Fonkert['s] Testimony [Under] Federal Rule 801(a) Present Sense Impression (docket no. 236) asks me to allow testimony from defense witness Rod Fonkert as to Hulstein's present sense impression after a meeting with an ATF inspector, the motion is **denied**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after

---

[4] Fonkert's report of Hulstein's statement that the ATF agent told him that he did not need a license may be admissible pursuant to Rule 803(3) as a statement about a "then-existing mental, emotional, or physical condition," that is, Hulstein's then-existing mental state or belief that he had been told he did not need a license, whether or not that belief was correct. *See* FED. R. EVID. 803(3); *see also Naiden*, 424 F.3d at 722. However, Hulstein did not argue that any of Fonkert's testimony is admissible pursuant to Rule 803(3), so I take no position on that question.

completion of trial or any guilty plea, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED.**

**DATED** this 21st day of February, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA